## STATE v. CUNNINGHAM, Defendant.

Ravenna Municipal Court.

No. 23606. Decided November 9, 1959.

O. J. Schneider, for the State.
Vincent E. Gilmartin, for the defendant.
Lockwood Thompson, for the Turnpike Commission: Amicus Curiae.

## OPINION

By FRANCE, J.

This matter was heard on affidavit filed by T. A. Davis, Ohio State Patrol (Turnpike) charging defendant with excessive speed, 90 miles per hour in a 65 mile per hour zone (turnpike) on October 4, 1959, in violation of §5537.16 R. C., and paragraph 2.3 Turnpike Rules. The form words imprinted on the standard ticket "over limit, prima facie unreasonable" were lined out and the words "over legal limit" substituted.

Defendant pleaded not guilty on October 5, 1959, and the matter came on for trial to court on October 14. At trial, before evidence was taken, motion was made to dismiss for the reasons that the affidavit failed to state an offense, and for the first time the question of the constitutionality of §5537.16 R. C., was attacked. Decision on the motion was reserved by the court under stipulation of counsel so that the evidence might be heard, and the motion was renewed at the close of the state's evidence and of all the evidence. The court found facts showing the defendant guilty, if the act were constitutional and, treating the previous motions as a motion in arrest of judgment, invited briefs on the constitutional point involved.

The offense of speeding on the turnpike is created by §5537.16 R. C., which provides:

"The commission shall have power to adopt such bylaws, rules and regulations as it may deem advisable for the control and regulation of traffic on any turnpike project, for the protection and preservation of property under its jurisdiction and control, and for the maintenance and preservation of good order within the property under its control. The rules and regulations of the turnpike commission with respect to the speed, axle loads, vehicle loads and vehicle dimensions of vehicles on turnpike projects shall apply notwithstanding the provisions of §§4511.21 to 4511.24, inclusive, §4513.34 and Chapter 5577 R. C. Such bylaws, rules, and regulations shall be published in a newspaper of general circulation in Franklin County, and in such other manner as the commission prescribes."

"Such rules and regulations shall provide that public officers shall be afforded ready access, while in the performance of their official duty, to all property under the jurisdiction of the commission, without the payment of tolls."

"No person shall violate any such bylaws, rules or regulations. All fines collected for the violation of such laws of the state and the bylaws, rules and regulations of the Turnpike Commission or moneys arising from bonds forfeited for such violations shall be disposed of in accordance with §5503.04 R. C."

Pursuant to this section the Turnpike Commission adopted, on April 4, 1956 (inter alia), Rule 2.3 reading, in part, as follows:

"No person shall operate a truck, trailer, semi-trailer or commercial

tractor upon the turnpike at a speed in excess of 55 miles per hour. No person shall operate any other motor vehicle upon the turnpike at a speed in excess of 65 miles per hour."

Defendant's contention is that §5537.16 R. C., violates **Article II, Section 1, Ohio Constitution,** by improperly delegating to the Turnpike Commission the legislative power to create penal offenses.

The question of what powers may validly be delegated by the legislature to other agencies of government has been much discussed by our Supreme Court. The most lucid recent discussion is by the late Judge James Garfield Stewart in **Weber v. Board of Health, 148 Oh St 390,** in which he state, at **page 395:**

"Under our Constitution the lawmaking function is assigned exclusively to the General Assembly, and it is a cardinal principle of representative government that the law-making body cannot delegate the power to make laws to any other authority or body. This general principle is universally held, but its particular application in the delegation of powers to boards and commissions, the establishment of which has become essential in the complexities of modern life, frequently creates a difficult problem. While no legislative power can be delegated to such bodies, the law-making body can confer administrative powers upon them to make rules and regulations to carry out the legislative intent."

The test normally used to determine whether the delegation is a prohibited and unconstitutional one, or a permissible one to carry out legislative intent is the presence of standards fixed by the legislature to guide the rule making body. Thus, constitutional delegation in fact finding has been upheld in the following cases, among others:

**Smith v. Ray, 83 Oh Ap 61 aff'd 149 Oh St 394.** (School consolidation.)

**Belden v. Union Central Life Insurance Co., 143 Oh St 329.** (Insurance Company conversion.)

**Carney v. Board of Tax Appeals, 169 Oh St 445.** (Uniformity of county tax valuation.)

Where there is in fact no standard set the legislation has been invalidated:

**State, ex rel. Reams v. Dusha, 50 Oh Ap 486.** (Little N. R. A.—following Panama Refining Co. v. Ryan, 293 U. S. 388.)

**Harmon v. State, 66 Oh St 249.** (Examinations and licensing of engineers.)

**State, ex rel. Srigley, v. Woodworth, 33 Oh Ap 406.** (Zoning regulations.)

**State v. Pairan, 80 Abs 484.** (Watercraft safety rules.)

In the matter of establishing standards for the guidance of the rule making body there appears to be a clear exception. Where the discretion to be exercised relates to a police regulation for the protection of the public morals, health, safety, or general welfare, and it is impossible or unpracticable to provide such standards then the delegation may be constitutional notwithstanding the absence of standards.

**Matz v. Curtis Cartage Co., 132 Oh St 271.**

Weber v. Board of Health, supra.

**Ex parte Company, 106 Oh St 51.**

It should be noted, however, that those cases which sustain delegation of power without standards involve either health and quarantine cases, or as in the Matz case, a regulation of a limited group within a large body (such as safety regulations for commercial truckers only). Judge Williams, speaking for the court in the Matz case, after pointing out the need for PUCO regulation of service, control of equipment and promotion of safety on part of commercial truckers, significantly went on to say: **(132 Oh St 286.)**

"However, it must be borne in mind that the fact that utilities are involved is a vital consideration. If this court had under consideration the question of **regulating the use of the highways by the general public through the instrumentality of a commission a different conclusion might be reached.**" (Emphasis added.)

The Turnpike Commission, in its brief **amicus curiae**, lays great stress on the Ohio cases establishing the validity of the turnpike act in general. However, in **State, ex rel. Commission, v, Ferguson, 155 Oh St 26** —the court expressly refused to express an opinion on the validity of the rule making **related to the power to create offenses,** and added the following significant language: (p. 44)

"Even if such provisions are invalid, the General Assembly could readily enact statutory provisions covering the use and protection of turnpike projects."

Again in **State, ex rel. Commission, v. Allen, 158 Oh St 168,** the Supreme Court refused to discuss the claim of invalid delegation of power as not one before the court. Nor are the commission's citations of cases involving turnpike cases in other states at all helpful. Opinion of the Justices, 133 N. E. (2), 452 (Massachusetts); State v. Turnpike Authority, 80 So. (2d), 337 (Florida), and People v. Illinois State Toll Highway Commission, 120 N. E. (2d), decide the same questions previously raised in Ohio by the Ferguson and Allen cases, that is the authority to sell bonds for, construct and operate turnpikes as toll roads. No question of fixing penal offenses by rule is remotely involved in any of these decisions. Nor is the question of creating rules for the internal administration of the Turnpike Commission, for making possible construction and administration involved here. Such type of rule making power is freely sustained by the courts; it is the creation of crimes by rule that is the question before the Court.

The Turnpike Commission in its argument, makes much of the fact that the turnpike was a new venture in which all problems could not be anticipated by the legislature or even by the commission itself and that broad discretion in the field of traffic regulation was necessary. The court agrees that the engineering problems of complete grade separation were tremendous and those of fixing tolls, designing interchanges. and planning and leasing service plazas were unusual. So far as traffic regulations were concerned however, the differences from normal were those of degree, not of kind. Limited access roads in Ohio existed before the turnpike; so did multi-lane divided highways; the experiences of the Pennsylvania Turnpike, in operation more than 15 years before the Ohio

act, were available as a guide to the Legislature. Undoubtedly, some variations from the normal as to permissible speed and axle loads were in order, given the improved design and road bed of the turnpike.

Clearly valid precedents for variation of traffic and weight rules from the normal have been established in Ohio for some time. Thus, under §4511.21 R. C., both the Director of Highways and municipal authorities are granted the right to vary **prima facie** speed limits from the norm; §4511.31 R. C., gives the Director authority to establish no passing zones. **Sec. 5577.07 R. C.** (the frost law), gives authority to local engineers to vary the weight limits.

These latter grants of authority are limited; the conditions are set forth; and findings of condition must be made. Similarly, §1531.08 R. C., which gives the Wildlife Council the power to set hunting and fishing regulations with the force of statute, recites in great detail the facts and conditions to which the council shall give consideration. Even the Township Zoning Act (**Chapter 519 R. C.**), makes elaborate provision for findings, hearings and appeals.

In contrast, §5537.16 R. C., the statute in question, sets up no standards, no provisions for hearings, no test except the uncontrolled and unappealable judgment of the commission itself. It has power to adopt such rules and regulations "as it may deem advisable"!

There appears to be no distinction between the grant of power here to the Turnpike Commission and that to the Division of Parks, which was found invalid in State v. Pairan, supra. The legislature was quick to admit its error after the Pairan decision by repealing the section in question and exacting a whole chapterful of watercraft regulations. If it could do the one, it is equally able to do the other.

It follows that §5537.16 R. C., so far as it attempts to confer on the Turnpike Commission the power to create penal traffic regulations by rule, is an unconstitutional delegation of legislative power for the reason that no standards for rule making are provided and that no traffic charge brought under such section states a punishable offense against a defendant.

There might be some fear that invalidation of the section in question would leave the Turnpike Commission, and the Highway patrolmen assigned to the turnpike, completely without remedy against negligent, reckless or wanton drivers, intent on killing themselves and others. To its credit, the commission in its brief does not raise this spectre. The reason seems obvious. Notwithstanding that the turnpike charges tolls, it is nevertheless a public highway. **State, ex rel. Kauer. v. Defenbacker, 153 Oh St 268; Secs. 5537.01 (B), 5537.03, 5537.07 and 5537.21 R. C.** It meets all the tests set forth in **State v. Root. 132 Oh St 229,** for a de jure highway. See Donegan & Fisher. Enforcement on Shopping Center Roads. Traffic Digest and Review. October, 1959, pp. 15, 36.

Consequently, since the Turnpike Rules do not supersede State traffic laws on the turnpike, it follows that the provisions of Chapters 4507, 4509, 4511, 4513 and 4549 R. C., are as fully effective on the turnpike as on any highway in the state. Since, in particular, §4511.21 R. C., specifies a **prima facie** speed limit subject to proof as to reasonableness,

no real problem in allowing higher speeds on the turnpike presents itself   The matter is merely one of discretion in making or failing to make arrests.

This factor cannot, of course, be used against the defendant in this case.   He was charged with the violation of a statutory section which is invalid and of a rule which, legally, does not exist.   The affidavit is dismissed and defendant discharged.

Since it would appear that review of the decision of law herein is likely, counsel should prepare and file Journal Entry giving effect to this opinion on or before November 20.   Such entry should be sufficiently detailed to constitute a bill of exceptions pursuant to §§2945.67 et seq, R. C. Counsel should also give appropriate notice to the Attorney-General so that he may, if he desires, interest himself in such review.